Leonia FORNEY, Appellant,

v.

MEMORIAL HOSPITAL et al., Appellees.

No. 7758.

Court of Civil Appeals of Texas,
Beaumont.

Nov. 4, 1976.

Rehearing Denied Dec. 12, 1976.

John H. Holloway, Houston, for appellant.

C. A. Searcy Miller, Dallas, Charles Parker, Houston, for appellees.

STEPHENSON, Justice.

This is an action for damages brought by plaintiff, Leonia Forney, under the Wrongful Death Statutes, arising out of the death of her husband, Raymond Forney. The cause of action is one commonly known as "medical malpractice" and the defendants are Violet Hiner Sinclair, a nurse anesthetist, and Memorial Hospital. Trial was by jury and judgment was rendered for defendants upon the verdict. The parties will be referred to here as they were in the trial court.

The evidence shows Raymond Forney died on the operating table shortly after the commencement of a general anesthetic being administered by defendant Sinclair.

The jury found that there was a failure to obtain the "informed consent" of Raymond Forney as to the anesthetic procedures performed. Informed consent was defined in the charge as follows:

"By the term 'INFORMED CON-SENT', as used in this charge, is meant the furnishing to the patient by the doctor or nurse anesthetist sufficient information about the nature of the anesthetic procedures to be performed, the persons who will administer the anesthetics, and the risks, complications, dangers, or hazards associated therewith, to enable the patient to make a knowledgeable, intelligent and informed consent to either accept the anesthetic procedure or to refuse the anesthetic procedure."

The jury then refused to find that a reasonably prudent person under the same circumstance would have declined to accept the anesthetic procedures administered by defendant Sinclair, if such patient had been properly informed.

The written consent which was obtained in this case reads as follows: "I consent to the administration of anesthesia to be applied by or under the direction of Dr. John Barrett, M.D., and the use of such anesthetics as he may deem advisable." This written consent was a form used in the defendant Hospital, with Doctor Barrett's name written in.

Plaintiff argues that she was entitled to recover nominal damages because of the jury finding that there was a failure to obtain the "informed consent" even though the jury answered, "None" to the damage issue. This contention is rejected for the reasons hereinafter stated.

It is stipulated in this record that Dr. Barrett, the anesthesiologist whose name is written into the "consent form" mentioned above, and Dr. Roy Leamon, the surgeon in this instance, had both settled with this plaintiff and had been dismissed as parties defendant.

After a careful and lengthy study of the "informed consent" cases in Texas and other jurisdictions, we have come to the conclusion that the burden was upon the plaintiff to prove and secure a jury finding that it was the accepted practice in the community in which this cause of action arose, for the anesthesiologist or anesthetist to secure an "informed consent" before administering anesthesia.

The evidence shows the obtaining of this form as used in this case was an accepted practice in this community, but the evidence bearing upon whether such consent

was an "informed consent" as defined by the court is sharply conflicting. The evidence offered by plaintiff would probably have supported an affirmative jury finding as to "informed consent". On the other hand, there is no doubt but that evidence offered by defendants would support a negative finding.

Defendant's evidence indicates that under the accepted practice in their community, it is the responsibility of the attending surgeon to furnish the patient the necessary information as to risks and complications associated with the surgery, and for the anesthetist to do more than let the patient know who would administer the anesthetic. The attending physician having been dismissed as a party defendant before this trial, there is no evidence in this record as to whether he had obtained Raymond Forney's "informed consent".

■ In the absence of a finding that it was the accepted practice in the community in which this operation was being performed, for the anesthesiologist or nurse anesthetist to obtain an "informed consent", we have concluded that it is necessary to have only the physician or surgeon treating or operating upon the patient to obtain the "informed consent." See *Weiser v. Hampton*, 445 S.W.2d 224 (Tex.Civ.App., Houston [1st Dist.] 1969, writ ref'd n. r. e.);

At page 230:

"The consent, if any, given to a surgeon, who is to perform an operation, by his patient, must be construed to include consent for him to secure such assistance furnished by the hospital as he may require."

At page 231:

"The duty of securing the patient's informed consent rests on the doctor treating the patient or performing the operation. The operating room personnel should not be required to anticipate that the doctor in charge of the operation would fail to secure such consent."

The second reason this court rejects plaintiff's contention that she is entitled to judgment based solely on the failure to obtain an "informed consent" from Raymond Forney is the failure of plaintiff to secure a jury finding as to causal connection.

We have come to the conclusion that plaintiff had the burden of establishing the nature of the risk or hazard the defendant nurse had to inform Raymond Forney about in order to obtain his "informed consent", and then to demonstrate how the failure to inform Raymond Forney resulted in his injury and damage. The language used by the court in *Karp v. Cooley*, 493 F.2d 408 (5th Cir. 1974), has application to the situation before this court. At page 422, this is written:

"In the instant case it is difficult to determine exactly what injury appellants complain of as resulting from a lack of informed consent. Although not particularly well-developed in Texas cases, other jurisdictions have held (1) that an unrevealed risk that should have been made known must materialize; (2) the unrevealed risk must be harmful to the patient; and (3) causality exists only when disclosure of significant risks incidental to treatment would have resulted in the patient's decision against it.

\*    \*    \*    \*    \*    \*

"Appellants failed to produce substantial evidence establishing a medical standard as to what disclosures should have been made to Mr. Karp, any violation of that standard, or causation. Thus, the trial court properly directed a verdict for defendants on the informed consent question."

See also, *Rea v. Gaulke*, 442 S.W.2d 826, 831 (Tex.Civ.App., Houston [14th Dist.] 1969, writ ref'd n. r. e.):

"There are situations wherein a doctor's failure to inform a patient of certain risks incident to a diagnosis or proposed treatment, in obtaining his consent, may be actionable. However, in establishing liability for such failure, the patient has the burden of proving by expert medical evidence that the reasonable medical practitioner of the same school in the

same or similar community under the same or similar circumstances, would have told the patient of such risks. The patient also has the burden of proving by expert medical evidence that such failure was a proximate cause of his damage. *Wilson v. Scott* (Tex.Sup.), 412 S.W.2d 299."

■ A third reason for rejecting plaintiff's contention that she is entitled to recover because of the "informed consent" issue is the special issue mentioned above, that the jury failed to find that a reasonable and prudent person under the same or similar circumstances would have declined the anesthetic procedures administered by defendant Sinclair had the patient been informed of the risks and hazards.

■ It is noted that this special issue is in the objective form rather than the subjective form. We approve of this method. See *Karp v. Cooley,* supra, for discussion as to the objective form of this issue. The jury answer to this special issue bars any recovery of plaintiff as it relates to the causal connection requirement as stated above.

■ An additional reason for rejecting plaintiff's contention as to "informed consent" is that the law is settled in this state that there can be no recovery of nominal damages in a case brought under the Wrongful Death Statute. *McGown v. International G. N. R. Co.,* 85 Tex. 289, 20 S.W. 80 (1892). See also, *Exxon Corporation v. Brecheen,* 519 S.W.2d 170, 184 (Tex. Civ.App., Houston [1st Dist.] 1975), reversed and remanded 526 S.W.2d 519 (Tex.1975).

Plaintiff's next point of error complains of the trial court's action in giving an instruction to the jury over her objection. The instruction was as follows:

"If you find from the credible evidence that other doctors, anesthesiologists, or nurse-anesthetists recognized more than one method for the administration of anesthesia to Mr. Raymond Forney, you are instructed that the defendant nurse-anesthetist was at liberty to select any of said methods. A nurse-anesthetist is not neg-

ligent merely because he made a choice of a recognized alternative method for the procedures he followed in the administration of anesthesia to Mr. Raymond Forney, if he exercised the required skill and care in administering and following the method of his choice. This would be true even though other medical witnesses may not agree with him on the choice he made."

An amendment to Tex.R.Civ.P. 277 which became effective September 1, 1973, includes the following:

"In submitting the case, the court shall submit such explanatory instruction and definitions as shall be proper to enable the jury to render a verdict and in such instances the charge shall not be subject to the objection that it is a general charge.

\*    \*    \*    \*    \*    \*

"The court shall not in its charge comment directly on the weight of the evidence or advise the jury of the effect of their answers, but the court's charge shall not be objectionable on the ground that it incidentally constitutes a comment on the weight of the evidence or advises the jury of the effect of their answers where it is properly a part of an explanatory instruction or definition."

This court has already recognized the fact that the amendment to Rule 277 liberalized the practice of giving explanatory instruction. See opinion by Justice Keith in *In re The Estate of May Belle Wood, Deceased,* handed down October 28, 1976, 543 S.W.2d 701. See also, the article by J. Pope and W. Lowerre, "Revised Rule 277—A Better Special Verdict System for Texas," 27 Sw. L.J. 577, 587 (1973).

■ Under this amended rule, we are convinced that the test by which an instruction is measured is not merely whether it is a general charge, but whether it is a misstatement as to the law applicable to the facts. We have studied the prevailing law as it applies to the factual situation existing in the case before us and do not find the explanatory instruction given to be improper. The point is overruled.

The next point of error is that the trial court erred in overruling objections to the testimony of Dr. Joe Walker, who was called as a witness by defendants. The objection is that Dr. Walker's opinion on the issue of causation was not admissible because it was based in part upon hearsay.

We do not find the record before us supports this complaint made by plaintiff. Dr. Walker's testimony shows that he read in the hospital record the medical opinion expressed that the patient had suffered a myocardial infarction. However, Dr. Walker says he came to that conclusion by his own study of the EKG without reference to the opinions contained in the hospital records. Plaintiff did not point out to this court where any objectionable testimony appears in our record, as required by Tex.R. Civ.P. 418. The point is overruled.

The trial court sustained an exception to plaintiff's pleading as to res ipsa loquitur in connection with the cause of action as to defendant Memorial Hospital. The general rule in this state is that the doctrine of res ipsa loquitur does not apply in a medical malpractice case. *Bell v. Umstattd*, 401 S.W.2d 306, 313 (Tex.Civ.App., Austin 1966, writ dism'd); *Barker v. Heaney*, 82 S.W.2d 417 (Tex.Civ.App., San Antonio 1935, writ dism'd).

An exception to that rule has been recognized when the nature of the alleged malpractice and injuries are plainly within the common knowledge of laymen. Examples of this exception are cases in which the operation is on the wrong part of the body or sponges or surgical instruments are left within the body. One of the most recent expressions on this subject is found in *Rayner v. John Buist Chester Hospital*, 526 S.W.2d 637 (Tex.Civ.App., Waco 1975, writ ref'd n. r. e.). The factual situation before us does not bring this case within the exception to the rule. This point is overruled.

Plaintiff has points of error as to the failure of the jury to make affirmative finding as to the acts of negligence submitted. Plaintiff contends the evidence es-

tablishes the act of negligence as a matter of law or that the failure to find is contrary to the great weight and preponderance of the evidence.

An examination of this record shows that there is evidence which would have supported an affirmative finding as to such acts of negligence. However, there is also evidence which supports the negative findings. In passing upon the "no evidence" points, we consider only the evidence favorable to the jury findings, and in passing upon the "great weight and preponderance of the evidence", we consider the entire record. All points are overruled. The evidence offered by plaintiff did no more than raise a question of fact for the jury, which they answered contrary to plaintiff's views.

We have carefully considered all of plaintiff's remaining points of error, and finding no merit to them, they are overruled.

AFFIRMED.