**Edgar Duncan RAUCH, Appellant,**

v.

**Raymond PATTERSON,
et ux., Appellees.**

No. A14–90–1117–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 30, 1992.

Rehearing Denied May 7, 1992.

Otto D. Hewitt, III, Alvin, James B. Galbraith and Evelyn T. Ailts, Deanne F. Rienstra, Galveston, for appellant.

Jonathan C. Juhan, Beaumont, for appellees.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

J. CURTISS BROWN, Chief Justice.

In this premises liability case, appellee Raymond Patterson, an independent contractor, fell through the stairway of a beach house and brought a negligence action against one of three trustees who managed the property. The defendant, Edgar Duncan Rauch, filed a Rule 93 denial contending that he was not liable in an individual capacity and that there was a defect in parties. TEX.R.CIV.P. 93(2), (4). At trial, he objected to the omission of a "duty" issue regarding ownership, occupation, or control of the premises. The trial court submitted the cause upon broad-form questions and, by a 10–2 verdict, the jury answered that Rauch was wholly responsible for Patterson's injuries. The judgment awarded Patterson and his wife the sum of $38,075.06 plus prejudgment interest. In fourteen points of error, Rauch contends (1) the jury charge omitted the essential element of Rauch's legal duty as an individual, and there was no evidence or insufficient evidence that he owed a duty to appellees; (2) the trial court erred in refusing to instruct the jury on defensive issues of new and independent cause and unavoidable accident; (3) there was no evidence to support the jury's affirmative finding of negligence, and the failure to find Patterson negligent was against the great weight and preponderance of the evidence; (4) the trial court erred in submitting issues on past lost earning capacity

damages and past medical expenses; (5) there was no or insufficient evidence to support the jury's finding of future medical expenses; and (6) the trial court erred in admitting certain medical records and testimony. We affirm.

Patterson testified that he went to the beach house in March 1986 at Rauch's request to repair a refrigerator. Rauch's daughters, the other two trustees, met Patterson at the beach house, and their husbands helped him carry the refrigerator down the stairs once he determined that he would have to repair the refrigerator at his shop. The next day, Patterson and his brother-in-law, John Hansen, returned with a 70–80–lb. loaner refrigerator. As they were carrying it up the stairs with the help of Rauch's sons-in-law, the stairs collapsed under Patterson, and he fell "straight down" ten feet with the refrigerator landing on his knees.

Treating Patterson, Dr. John Blum wrapped his right leg, prescribed medicine, and advised him to stay off work for a month. Later, he referred Patterson to Dr. G.W. Cox, who performed orthoscopic surgery on both knees after Patterson could not walk straight and would stumble and fall, sometimes daily. Dr. Cox has recommended further surgery on both knees.

■ The threshold question in a negligence case is whether the defendant owed the plaintiff a legal duty. *Cameron County v. Velasquez*, 668 S.W.2d 776, 779 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.). Existence of a duty is a question of law. *Mitchell v. Missouri–Kansas–Texas R.R. Co.*, 786 S.W.2d 659, 662 (Tex.1990), cert. denied, — U.S. —, 111 S.Ct. 247, 112 L.Ed.2d 205. Rauch contends that the essential element of duty was omitted from the jury charge and there can be no implied finding because Rauch objected to the omission. In the absence of a finding, he contends, there can be no recovery. Rauch had filed a verified denial pursuant to Tex. R.Civ.P. 93(2), (4), claiming that he was not liable in the individual capacity in which he was sued and asserting a defect in parties. He pointed out that his wife had purchased the beach house with funds she had inherit-

ed, and that the Edgar D. Rauch Trust acquired the property in 1983. Patterson did not specially except to the Rule 93 denials, and Rauch sought a directed verdict which was denied. Rauch contends that his Rule 93 denials put "in issue" the question of his liability as an individual. However, this contention begs the question because, as a trustee, Rauch held legal title and right of possession of the trust property. *Jameson v. Bain*, 693 S.W.2d 676, 680 (Tex.App.—San Antonio 1985, no writ). There was no factual dispute regarding Rauch's status as a trustee, thus cases cited by Rauch concerning the control of a non-owner are inapposite. Moreover, an abundance of evidence established Rauch's control of the property and a duty to Patterson as a business invitee. From time to time, Rauch would call Patterson, ask him to go to the beach house to make repairs, then pay the bill by personal check. The same procedure was followed when another contractor made repairs. Rauch did not indicate that he was not the owner; in fact, he carried the beach house on his individual insurance policy. Rauch owed Patterson a duty, as his business invitee, to exercise ordinary care to maintain the premises in a reasonably safe condition or to warn Patterson of any dangerous conditions that Rauch knew or should have known about and were not reasonably apparent to his business invitee. *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536–37 (Tex.1975).

■ The Texas Supreme Court has repeatedly approved, and indeed urged, broad issues as the correct method for jury submission. *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n*, 710 S.W.2d 551, 554 (Tex.1986) (quoting *Lemos v. Montez*, 680 S.W.2d 798, 801 (Tex.1984)). Patterson urged the charge be given to the jury in a broad form, and he requested the following accompanying instruction:

"NEGLIGENCE" by an owner or occupier of premises is the failure to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the occupier knows about or in the exercise of ordinary care should know about.

An owner or occupier's negligence depends on whether he acted reasonably in light of what he knew or should have known about the risks accompanying a premises condition.

Patterson contends that such an instruction would have cured any alleged error; certainly, it would have enabled Rauch to argue to the jury that he was not "an owner or occupier" of the premises. However, Rauch objected to the instruction, and it was not given. A party may not secure a reversal for a claimed error that he or she invited. *Dickson v. J. Weingarten, Inc.* 498 S.W.2d 388, 391 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ) (citations omitted); *see Klein v. Sporting Goods, Inc.*, 772 S.W.2d 173, 179 (Tex.App.—Houston [14th Dist.] 1989, writ denied). We find no reversible error in view of the evidence establishing Rauch's legal title as a trustee, his control of the premises, and Patterson's status as Rauch's business invitee. Points of error one, two, three and five are overruled.

■ Rauch also contends there was no evidence to support the jury's finding that he was negligent, and that both that finding and the failure to find Patterson negligent were against the great weight and preponderance of the evidence. In considering a "no evidence" point, we consider only the evidence tending to support the jury's finding, viewing it in its most favorable light, giving effect to all reasonable inferences that may be properly drawn therefrom, and disregarding all contrary or conflicting evidence. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981). In reviewing factual insufficiency points, we consider all of the evidence relevant to the fact being challenged. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (Tex.1951); *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989).

■ Following the accident, when Patterson inspected the stairs he found the nails "totally gone, rusted in two ... nothing but powder" and wood was "weak, weary [and] weatherbeaten." Hansen, a carpenter, noticed some of the nail heads

had pulled through the lumber, and the wood was "visibly rotten" and "soft by exposure." In addition, Monte Potter, the general contractor who rebuilt the stairs after the accident, had informed Rauch that the handrails were split, dried-out, and weatherbeaten, and he had replaced some wood on the deck because it was "old and split" and "losing its holding power." Although built of the same pine wood, the stairs had not been replaced.

Rauch counters that he did not know or have reason to know of any premises defect because he had not been on the property in six months. Patterson himself had previously told one of Rauch's daughters that the stairways and deck needed some repairs, and the other two trustees, not Rauch, were present at the beach house when the accident occurred. Although Potter had replaced some wood on the deck, he stated that the stairs were not rotting in April 1985 and he did not recall them being wobbly, thus it "wasn't necessary" to have replaced any of the steps. We do not find this evidence compelling in light of the extensive evidence of damage indicating that the accident could have been avoided had Rauch met his duty to inspect the stairs and make necessary repairs. Points of error six, seven and fourteen are overruled.

■ Next, Rauch contends the trial court erred in refusing to instruct the jury on defensive issues of new and independent cause and unavoidable accident. Regarding new and independent cause, he recounts the evidence tending to refute negligence on his part, but there is no evidence of any superseding cause or event that interrupted the natural sequence of events. *Galvan v. Fedder*, 678 S.W.2d 596, 598 (Tex.App.—Houston [14th Dist.] 1984, no writ). Unavoidable accident is defined as an event not proximately caused by the negligence of any party to it. *Lemos*, 680 S.W.2d at 801 (citing *Dallas Railway & Terminal Co. v. Bailey*, 151 Tex. 359, 250 S.W.2d 379, 385 (1952)); *Daggett v. McReynolds*, 459 S.W.2d 475, 476 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ). As explained in *Leatherwood Drilling Co. v.*

*TXL Oil Corp.,* 379 S.W.2d 693 (Tex.Civ. App.—Dallas 1964, writ ref'd n.r.e.):

> It is now well settled that an issue of unavoidable accident must find some support in the evidence to authorize its submission. (Citations omitted.) Ordinarily the issue should not be submitted in a case involving a two-party accident where there is no evidence in the record that something other than acts of the two parties, such as a condition, caused the accident. (Citations omitted.)

*Id.* at 697. Here, there was no evidence that a nonhuman event caused the injury. Rather, the evidence tended to show that Rauch either failed to inspect or was negligent in not repairing the stairs when he knew or should have known of their defective condition. We overrule point of error four.

▇▇▇▇ Rauch also contends the trial court erred in admitting certain medical records and the testimony of witnesses who had not been timely disclosed in interrogatory answers. In January 1990, less than 30 days before the trial was originally scheduled to begin, Patterson supplemented his interrogatories with the names of Hansen and Drs. Blum and Cox, along with Don Oglsby, Scott Oglsby, Tommy Patterson, Bobby Rhea, Marie Thompson, and Joe Willis as witnesses; Hansen and Drs. Blum and Cox also were designated as expert witnesses. After the case was reset, in March 1990 Rauch moved to strike the designation of witnesses as neither "seasonable" nor "as soon as practical." Patterson contends that, when it became clear the case would not be heard until summer, Rauch's attorney agreed to withdraw his motion. However, a good faith belief in the existence of an agreement concerning a pending suit is unenforceable when, as here, the existence of the agreement is disputed. *London Market Companies v. Schattman,* 811 S.W.2d 550, 552 (Tex. 1991). To be enforced, such an agreement between attorneys or parties must be in writing, signed, and filed in the record of the cause. *Id.;* TEX.R.CIV.P. 11.

▇▇▇ Rauch's counsel did not withdraw the motion, and Patterson's witnesses were struck at a hearing that Patterson's counsel did not attend. Patterson contends that his attorney first learned that the witnesses had been struck when the case finally went to trial in July 1990. By then, Patterson's witnesses had been listed six months before the trial actually began, while some of Rauch's witnesses had been listed for only thirty-one days. Patterson pointed out the inequity of striking his witnesses while allowing Rauch's to testify, and in response, the trial court allowed Hansen to testify as a lay witness. At that point, Rauch could have asked for a continuance to depose Hansen. In our view, this was a reasonable decision, imposing a sanction no more severe than necessary to remedy any possible prejudice in preventing Rauch time to prepare for the witnesses not listed prior to January 1990. *See TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991). Alternatively, Patterson characterizes the trial court's consideration of the matter as a rehearing of Rauch's motion to strike, and that the decision to allow the testimony can only be set aside upon a showing of abuse of discretion. He also points out that Hansen's testimony was merely cumulative of the testimony of other witnesses, therefore any alleged error in allowing the testimony was harmless. We overrule point of error number nine.

▇▇▇ Rauch also contends the trial court erred in admitting the various medical providers' records and bills into evidence although the custodians of these records were not designated as persons "having knowledge of relevant facts" in Patterson's response to interrogatories. TEX.R.CIV.P. 166b(2)(d). The records in question were proved by affidavit and/or deposition upon written questions by custodians of the various medical providers. Patterson cites *Tinkle v. Henderson,* 777 S.W.2d 537, 540 (Tex.App.—Tyler 1989, writ denied), for the proposition that under TEX.R.CIV.P. 215(5), a records custodian need not be a person with knowledge of relevant facts as the term is employed under the Rules. However, we need not decide whether, as a matter of law, Rule 215 necessarily covers

records custodians because we are convinced that the error, if any, in admitting the records was harmless in light of Dr. Cox's testimony that the charges for Patterson's treatment were usual, necessary, reasonable, and customary for the injuries he sustained. Point of error number ten is overruled.

For the foregoing reasons, we hold that evidence regarding Patterson's medical expenses was properly before the court. Therefore, we overrule Rauch's eleventh point of error complaining that there was no evidence to support submission of the issue to the jury.

 In point of error number eight, Rauch contends there was neither evidence nor pleadings to support submission of a jury issue on past lost earning capacity. To the contrary, there was considerable evidence to support Patterson's plea of damages for loss of earnings and diminished earning capacity. For example, prior to the accident, Patterson worked two jobs— for both Electrical Troubleshooters and his own business, Ray's Electric—totaling twelve to sixteen hours a day, seven days a week. As a result of the injury, on doctor's orders, he did not work for at least a month, losing nineteen days from Electrical Troubleshooters at $12 an hour, and some $200 to $600 a day at his own business. Patterson and his wife also testified regarding the cost of service calls, usual number of calls, and the need to hire electrician helpers at four or five dollars an hour to help Patterson after he was injured. Eventually, the Pattersons had to close the business. Upon this evidence, the jury could reasonably measure Patterson's lost earnings and his loss of earning capacity. We overrule point of error number eight.

Next, Rauch attacks the jury's award of $8,300 in future medical expenses when the evidence reflected that Patterson's prior surgery had cost $5,560, a difference of $2,740. However, Patterson had foregone certain recommended treatment on his right leg—for example, X-rays that would have cost $800 and a Magnetic Resonance Imaging (MRI) test—because he could only afford treatment of one leg, not both. We recognize that the award of future medical expenses is primarily a matter for the jury to decide, and no precise evidence is required. The jury may make its determination based on the nature of the injury, medical care rendered before trial, and the condition of the injured party at time of trial. *Hughett v. Dwyre*, 624 S.W.2d 401, 405 (Tex.App.—Amarillo 1981, writ ref'd n.r.e.). By their very nature, future medical expenses are uncertain and not subject to exact measurement. Although we would prefer that the evidence had been better-developed, in light of Patterson's injuries, testimony of previous charges he incurred, and his continuing symptoms—as well as the truism of life that the cost of medical treatment continues to rise—we conclude that the evidence was sufficient to support the jury's answer. Points of error twelve and thirteen are overruled.

We affirm the judgment of the trial court.